**Entered on Docket**
**September 30, 2013**
**GLORIA L. FRANKLIN, CLERK**
**U.S BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**The following constitutes the order of the court. Signed September 30, 2013**

**Charles Novack**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

| | |
|---|---|
| In re:<br><br>BILLY NGUYEN,<br><br>Debtor. | Case No. 07-50787-CN<br><br>Chapter 7 |
| BRANDO NGUYEN AND JENNIFER NGUYEN<br><br>Plaintiffs,<br>vs.<br><br>BILLY NGUYEN,<br><br>Defendants. | Adversary No. 12-05081<br><br>**MEMORANDUM ORDER ON MOTION FOR SUMMARY JUDGMENT** |

On April 19, 2012, Brando Nguyen and Jennifer Nguyen (the "Plaintiffs") filed this adversary proceeding seeking a non-dischargeable judgment against defendant Billy Nguyen ("Nguyen") under Bankruptcy Code §523(a)(2)(A). On June 28, 2013, Plaintiffs filed their Motion for Summary Judgment which this court heard on August 9, 2013. Appearances were stated on the record. At the close of the hearing, this court requested additional briefing. Having received and reviewed this additional briefing, the court grants Plaintiffs' motion for summary judgment.

## General Background

In April 2004 Nguyen, a licensed real estate broker, operated a South Bay realty firm

known as “Quick Sale Realty.” Quick Sale Realty employed Andy Tran (“Tran”) as a real estate agent. Tran was not a licensed broker and conducted business under Nguyen’s broker’s license.

In late 2003 or early 2004, Tran contacted Hoan Thoa Phi Pham (“Pham”) regarding vacant land which she was seeking to sell. Pham had purchased the vacant land, located at 40 Boulder Dr., San Jose, CA, (the “Property”) for $125,000 in December 2001. After purchasing the Property, Pham learned that developing the Property would be extraordinarily expensive due to soil instability issues. To safely build any large structure on the Property, Pham believed that she would need to pour four concrete piers as part of its foundation. Installing these piers alone would cost $400,000. When she met Tran, Pham had been trying to sell the Property for almost two years, and she told Tran that she wanted to net $125,000 from the sale of the Property. Pham and Tran agreed that Tran could retain any sale amount over $125,000 as his “commission.”[1]

Tran met the Plaintiffs in early 2004 while marketing the Property. Tran represented to Plaintiffs that while the Property was listed for $168,000, he could persuade Pham to sell it for $150,000. Tran did not disclose the Property’s soil problems to the Plaintiffs or recommend that they hire a geologist, engineer or any other professional to inspect the Property. Instead, Tran informed them that they could build on the Property if they installed four concrete piers at a cost of $40,000, and he suggested that they contact “local authorities” with any questions they had regarding the Property.

On April 14, 2004, Plaintiffs submitted a $150,000 offer to purchase the Property, which Pham promptly accepted. The sales contract, was subject to “land inspections.”

When the Plaintiffs began their due diligence, they discovered (after contacting the “local authorities”) that they needed a “hazard clearance”before they could build on the Property. Plaintiffs relayed this to Tran, and he instructed Plaintiffs to add the language “without hazard clearance” on the removal of contingency form (which they later signed). Tran did not know

[1] Despite this arrangement, Pham did not retain Tran as her listing agent. As seen above, Tran assisted Pham in marketing the Property.



Case: 12-05081 Doc# 36 Filed: 09/30/13 Entered: 09/30/13 13:42:51 Page 2 of 9

what a hazard clearance was, and did not advise the Plaintiffs regarding how to obtain a clearance.. Tran did warn the Plaintiffs, however, that Pham have several other interested parties willing to pay full price for the Property. Concerned that they could lose the Property, the Plaintiffs released all contingencies, and escrow closed on May 14, 2004— a full twelve days earlier than the earliest close of escrow date contained in the sales contract.

Tran's representation that there were several interested parties was untrue. No back-up buyers existed.

After closing on the Property, the Plaintiffs discovered that the Property's environmental and soil stability issues astronomically increased their construction costs. In July 2004, they sought to rescind the sales contract, which Pham refused. Plaintiffs thereafter exercised the sales contract's arbitration clause and commenced arbitration (the "Arbitration") against Pham, Tran, and Nguyen.



**The Arbitration**

Plaintiffs argued during the Arbitration that Tran had breached the fiduciary duties he owed to them as their real estate agent. The arbitrator agreed. On January 16, 2007, the arbitrator issued his decision (the "Arbitration Award"), finding that Tran, among other things, misunderstood the sales contract, failed to recommend that Plaintiffs conduct due diligence on the Property before waiving the contingencies, failed to prepare an effective contingency removal form that would protect Plaintiffs' interests, and failed to disclose to Plaintiffs that he had no experience in vacant land transactions. The arbitrator found that Tran "wholly failed to exercise reasonable care, diligence and skill in the performance of his duties to represent [Plaintiffs] in [the] transaction" and had committed "gross negligence at its worst and a breach of fiduciary duty."

The arbitrator also determined that Tran was directly responsible for Plaintiffs' damages arising out the transaction, not only due to his incompetence and breach of fiduciary duties, but because he had induced the Plaintiffs into buying the Property through his affirmative misrepresentations that (a) installing the foundation piers would cost $40,000 (rather than

$400,000) and (b) there were back-up buyers willing to pay full price. The arbitrator held that these affirmative misrepresentations constituted fraud.

The arbitrator did not find that Nguyen himself breached any fiduciary duty owed to Plaintiffs, or that he had personally defrauded them. The arbitrator did find, however, that (a) Tran was operating under Nguyen's broker's license, (b) the California Business and Professions Code renders a broker liable for the acts of an agent, and (c) the state law doctrine of *respondeat superior*, as well as the rules of agency and applicable state real estate law, rendered a broker liable for his agent's acts. For these reasons, the arbitrator found that Nguyen and Tran were jointly and severally liable for Plaintiffs' damages arising out of the transaction. The arbitrator awarded $150,000 in damages (and pre-judgment and post-judgment interest), ordered Nguyen and Tran to reimburse Plaintiffs for the property taxes that they had paid since purchasing the Property, and required that Nguyen and Tran disgorge the $23,163.12 "commission. On March 20, 2007, the Santa Clara County Superior Court entered the arbitration award as a judgment (the "Santa Clara Judgment").

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

**Tran's Bankruptcy Case**

Tran filed his Chapter 7 case on September 6, 2007. Plaintiffs filed an adversary complaint in his case, asserting that the Arbitration Award and the Santa Clara Judgment were irrefutable evidence of Tran's nondischargeable liability under Bankruptcy Code §523(a)(2). On September 7, 2010, the bankruptcy court conducted a trial in that adversary proceeding and found for the Plaintiffs (the "Bankruptcy Court Judgment").[2] The court determined that only the "commission" generated by the Property's sale was nondischargeable, and entered a $23,163.12 judgment in Plaintiffs' favor, plus applicable interest. Tran discharged the balance of the Santa Clara Judgment.

---

[2]The trial was conducted in the San Jose Division of the United States Bankruptcy Court for the Northern District of California by the Honorable Roger L. Efremsky. Following the trial, Judge Efremsky transferred to the Oakland Division. Certain of his cases, including Tran's chapter 7 case, remained in the San Jose Division and were assigned to the Honorable Stephen L. Johnson. Judge Johnson entered the Bankruptcy Court Judgment.

The bankruptcy court explicitly held that the evidence did not support a finding that Tran had intentionally failed to disclose the Property's "buildability"[3] issues or that Tran had intentionally misled the Plaintiffs regarding the cost of the four support piers. Although Tran's $40,000 figure represented only one-tenth of the actual cost, the bankruptcy court determined that Tran had simply relayed a number that had been provided to him by Pham or a third-party builder whom Tran had consulted. The Bankruptcy Court did find, however, that Tran defrauded the Plaintiffs under § 523(a)(2)(A) when he informed them that (a) there were other potential buyers when no such buyers existed, and (b) the lowest purchase price Pham would accept was $150,000, when she was more than willing to sell the Property for $125,000.

Plaintiffs now contend that Nguyen, as Tran's broker, is equally liable for these non-dischargeable damages under § 523(a)(2)(A) by virtue of the doctrines of issue and claim preclusion.



**Legal Argument**

The summary judgment standard under Fed. R. Bankr. P. 7056 is well settled. Summary judgment should be granted "if the pleadings, the discovery, and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56. *See also, Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986). Only disputes "over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 472 U.S. 1242, 248 (1986). This court's duty is not to weigh the evidence and decide the truth of the allegations, but to determine whether there is a genuine issue for trial. *Id*. at 249. A fact is "material" when, under the governing substantive law, it could affect the outcome of the case. *Id.* at 248. A "genuine issue" of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ibid.* To

[3]The Arbitration Award, the bankruptcy court's transcript, and the various pleadings all make reference to the "buildability" of the Property when describing the environmental and engineering challenges inherent to building structures on the Property.

prevail, Nguyen must provide "specific facts" demonstrating that there is a genuine issue for trial, and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matshusita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Finally, since Nguyen is not the moving party, all justifiable inferences are drawn in his favor. *Anderson*, 477 U.S. 242 at 255.

Issue preclusion bars re-litigation of an issue decided previously in a judicial or administrative proceeding, provided that the losing party had a full and fair opportunity to litigate the issues in the earlier proceeding. *See, e.g., Allen v. McCurry*, 449 U.S. 90, 96, (1980); *In re Elder,* 262 B.R. 799, 806 (C.D. Ca. 2001). Under the doctrine of claim preclusion, a judgment on the merits bars a second suit involving the same parties or their privies based on the same claim for relief. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326, n. 5 (1979). In determining the "issue" preclusive effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply the forum state's law of issue preclusion. *In re Nourbakhsh*, 67 F.3d 798, 800 (9th Cir.1995); *see also, In re Bugna*, 33 F.3d 1054, 1057 (9th Cir.1994). Courts looks to federal common law, however, to determine the preclusive effect of a federal court judgment. *In re Zaharescu*, 2013 WL 3762285, at *2 (C. D.Cal. July 11, 2013). Issue preclusion applies in dischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 (1991). Claim preclusion may also prevent re-litigation of a §523(a)(2) claim where a judgment related to the dischargeability of the claim was entered in a prior bankruptcy. *In re Sanders*, 2007 WL 7540961, at *3 (9th Cir. BAP, March 30, 2007); *Moncur v. Agricredit Acceptance Co. (In re Moncur),* 328 B.R. 183, 186 (9th Cir.BAP 2005). To resolve this motion, this court must examine and apply California and federal common law issue and claim preclusion principles.

**California Issue Preclusion**

Under California law, a judgment confirming an arbitration award has the same force and effect as a judgment in a civil action. Cal. Civ. Proc. Code § 1287.4; *see also, Caldeira v. County*

*of Kauai*, 866 F.2d 1175, 1178 (9th Cir.1989), *cert. denied*, 493 U.S. 817 (1989).[4] Accordingly, this court applies California law to determine the preclusive effect of the arbitrator's ruling that Nguyen is vicariously liable for Tran's conduct. Under California law, issue preclusion applies if: (1) the issue sought to be precluded is identical to that decided in the former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; (5) the party against whom issue preclusion is sought is the same as, or in privity with, the party to the former proceeding; and (6) imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy. *In re Shahverdi*, 2013 WL 2466862, at *12 (9th Cir. BAP, Jun 07, 2013).

The arbitrator explicitly found that Nguyen was liable for Tran's conduct in connection with the sale of the Property to Plaintiffs. It is also undisputed that Nguyen actively participated in the Arbitration and that the Santa Clara Judgment is a final judgment.[5] Accordingly, the first five elements of the California issue preclusion standard are easily satisfied. The only outstanding issue then, is whether "issue preclusion in the particular setting would be fair and consistent with sound public policy." The court is not aware of any public policy concern that would be implicated by honoring a state court's finding as to the agency relationship between Tran and Nguyen. Honoring the Santa Clara Judgment promotes the policies of "conserving judicial resources [and] . . . judicial economy by minimizing repetitive litigation, preventing inconsistent judgments which undermine the integrity of the judicial system, and avoiding the harassment of parties through repeated litigation." *Murray v. Alaska Airlines*, 50 Cal.4th 860, 867, 114 Cal. Rptr. 3d 241, 237 P.3d 565, 567 ( 2010). Accordingly, this court adapts the arbitrator's finding that Nguyen is liable for Tran's conduct in connection with the sale of the

[4]*See also*, 28 U.S.C. §1738; *Duarte v. Bardales*, 526 F.3d 563, 577 n.4 (9th Cir.), *reh'g denied*, 530 F.3d 1151 (2008) (quoting *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 326 (9th Cir. 1995) "[f]ederal courts must give the same preclusive effect to state court judgments that those judgments would be given in that state's own courts.")

[5]Nguyen did not appeal the Santa Clara Judgment.



UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Property.

**Federal Claim Preclusion**

In a federal-question case, courts apply the "uniform federal rules" of claim preclusion set forth in *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507–508 (2001). *See also, Chudacoff v. Univ. Med. Ctr.*, 2013 WL 1679357 (9th Cir. Apr.18, 2013). Under federal law, claim preclusion "is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) *(quoting Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* 322 F.3d 1064, 10 77 (9th Cir. 2003). The first and second *Semtek* factors are easily satisfied by the Bankruptcy Court Judgment. Whether there is "privity between the parties" however, is not initially clear.

The U.S. Supreme Court has held that "privity" does not require that the parties be identical. "We have recognized an exception to the general rule [of identicality of parties] when, in certain limited circumstances, a person although not a party, has his interests adequately represented by someone with the same interests who is a party." *Richards v. Jefferson County, Alabama*, 517 U.S. 793, 798 (1996) *(quoting Martin v. Wilks*, 490 U.S. 755, 762 n. 2, 109 S.Ct. 2180, 2184 n. 2 (1989)). The Supreme Court then described an exception similar to the facts herein, acknowledging that "there is an exception when it can be said that there is 'privity' between a party to the second case and a party who is bound by an earlier judgment." This definition of privity has been codified in the Restatement of Judgments as follows:

> "If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other . . . [a] judgment in favor of the injured person is conclusive upon him as to the amount of his damages."

Restatement (Second) of Judgments § 51; *see also*, *Krepps v. Reiner*, 377 Fed.Appx. 65, 68 (2nd


Case: 12-05081 Doc# 36 Filed: 09/30/13 Entered: 09/30/13 13:42:51 Page 8 of 9
UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Cir. May 14, 2010).

As discussed, above, the doctrine of issue preclusion allows this court to honor the arbitrator's finding that Nguyen was vicariously liable for Tran's conduct regarding Pham's sale of the Property to Plaintiffs. Nguyen's non-dischargeable liability must then be co-extensive with Tran's §523(a)(2)(A) liability to Plaintiffs. Thus, under federal claim preclusion law, Plaintiffs' § 523(a)(2)(A) judgment against Tran precludes Nguyen from contesting entry of an identical, non-dischargeable judgment against him.

Entering a nondischargeablity fraud judgment against a party on a vicarious liability theory generally gives this court pause. The Ninth Circuit Bankruptcy Appellate Panel has repeatedly held, however, that a bankruptcy court may enter a nondischargeable judgment against a party on a vicarious liability or agency theory. *See, e.g.*, *In re Tsurukawa*, 287 B.R. 515 (9th Cir. BAP 2002); *In re Nguyen*, 2012 WL 603680 (9th Cir. BAP, Feb. 17, 2012); *In re Babian*, 2013 WL 646386 (9th Cir. BAP, January 04, 2013).

The Bankruptcy Court entered a $23,163.12 damages award against Tran, an amount equal to the "commission" arising from the Property's sale. This court grants Plaintiffs' motion for summary judgment and finds that Plaintiffs are entitled to a $23,163.12 non-dischargeable judgment against Nguyen. Pre-judgment interest is also awarded at the rate of 10% per annum pursuant to California Code of Civil Procedure §§ 685.010 and 685.020 from March 20, 2007 through entry of judgment herein. Plaintiffs are also entitled to post-judgment interest, following entry of this judgment, at the federal judgment rate as set forth in 28 U.S.C. § 1961(a) (allowing post-judgment interest on civil money judgments); *see also*, *In re Fiene*, 2012 WL 3867337, at *9 (C.D. Cal. 2012). Plaintiffs are directed to submit a judgment for this court's signature.